UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK A. WEBB,

                Plaintiff,

v.

**DECISION AND ORDER**
12-CV-753S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant[1].

1. Plaintiff Mark A. Webb challenges an Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. Plaintiff now contends that the ALJ's determination is not based upon substantial evidence, and therefore reversal is warranted.

2. Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on August 27, 2008. Plaintiff also protectively filed a Title XVI application for supplemental security income on August 27, 2008. Both claims were initially denied on March 5, 2009. Following Plaintiff's written request, a hearing was held on October 14, 2010 at which both Plaintiff and a vocational expert testified. The ALJ considered the case *de novo*, and on October 28, 2010, issued a decision denying Plaintiff's application for benefits. On June 15, 2012, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the instant civil action on August 9, 2012, challenging the

---

[1]Although this action was commenced against Commissioner Michael Astrue, the parties agree that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party.

1

Commissioner's final decision.

3. On March 21 and 24, 2013, the Commissioner and Plaintiff filed Cross-Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner filed a response to Plaintiff's motion on April 22, 2013. Although the time allotted in this Court's scheduling order has expired, no further submission was filed by Plaintiff, therefore this Court will consider the matter fully briefed.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 20);[2] (2) Plaintiff has severe impairments, specifically "cocaine, opiate, cannabis and alcohol dependence, bipolar disorder, obesity, and status post left leg gunshot wound," and "may have" the following non-severe impairments: migraines, hypertension, left foot bunion, and Hepatitis B and C (R. at 20); (3) neither these impairments or any combination thereof meet or medically equal a recognized disabling impairment under the regulations (R. at 21); (4) Plaintiff has the residual functional capacity to perform light work with certain limitations, including non-exertional limitations regarding his ability to remember or carry out complex tasks (R. at 22); and (5) although Plaintiff is unable to perform any past relevant work, he has the capacity to perform simple work such as office helper or mail clerk (R. at 28).

---

[2] Citations to the underlying administrative record are designated as "R."

10. Plaintiff challenges the denial of benefits on the ground that the ALJ failed to include Plaintiff's "severe cognitive disorder" as one of his severe impairments, and further failed to "acknowledge or evaluate [Plaintiff's] Learning Disorder/Cognitive limitations" in the residual functional capacity (RFC) determination. (Pl's Mem of Law at 10-12.) Plaintiff argues that, because the record reflects his history of special education and low IQ, he satisfies the regulation listing for "mental retardation" found in 20 C.F.R., Subpart P, App'x 1, 12.05(C). In raising this objection, Plaintiff does not dispute that the ALJ assessed Plaintiff's claimed affective disorders, specifically depression and bipolar disorder, pursuant to the criteria in listing 12.04. (R. at 21-22, 44-45); See 20 C.F.R., Subpart P, App'x 1, 12.04. Instead, Plaintiff focuses on an IQ determination by a consulting psychologist, who found that Plaintiff had an IQ score consisting of 66 on the verbal scale, 73 on the performance scale, and a full scale IQ of 66, technically placing him within the "mildly mentally retarded range of intellectual functioning." (R. 25, 740). Plaintiff therefore argues that he should have been found *per se* disabled pursuant to listing 12.05(C) without further consideration of vocational factors such as age, education, and work experience.

In order to to meet or medically equal the listing under subsection 12.05(C), which defines mental retardation for purposes of social security regulations, a claimant must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Subpart P, App'x 1, 12.05; see Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012). Specifically, a claimant must have a valid IQ score between 60 and 70 and related deficits in adaptive functioning, both of which began during the developmental period. Lawler v. Astrue, 512 Fed. App'x 108, 110 (2d Cir. 2013) (quoting 12.05(C)); Talavera, 697 F.3d at 153.

5

Here, for the purposes of the present discussion, Plaintiff's IQ was 66. See 20 CFR Pt. 404, Subpt. P, App. 1, 12.00(D) (6)(c) (where, as here, verbal, performance, and full scale IQs are provided, the lowest is used for purposes of 12.05). The consulting psychologist who examined Plaintiff, however, found that Plaintiff's "true cognitive abilities lie in the borderline range" in light of the higher performance scale - 73 - and his "greater strengths in nonverbal problem solving skills." (R. at 740.) The psychologist therefore found that the mild cognitive impairment should not alone "preclude [Plaintiff's] ability to function in a supervised work setting." (Id.) Further, although it can usually be legally presumed that a claimant's current IQ score is consistent with a mental impairment beginning during his developmental period, such is not the case here where the record contains evidence of prior head trauma and cognitive interference from substance abuse problems. (R. at 27, 738, 740-41); see Talavera, 697 F.3d at 152 (absent trauma or other evidence of a negative impact on mental capacity, cognitive function is presumed consistent over time).

Even assuming that he met the regulation's IQ requirement, Plaintiff must also establish that he had related "deficits in adaptive functioning" that arose prior to age 22 "from [his] cognitive limitations, rather than from a physical ailment or other infirmity." Talavera, 697 F.3d at 153. "Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life," such as a claimant's effectiveness in areas of social skills, communication, and daily living skills. Talavera, 697 F.3d at 153 (internal quotation marks and brackets removed); Betram v. Colvin, No. 6:11-CV-1505, 2013 WL 2403668, *2 (N.D.N.Y. May 31, 2013). Here, the ALJ found "mild limitations" in Plaintiff's social functioning and daily living, but concluded that the asserted "mental health problems are only [a] red herring" to divert attention away from Plaintiff's "main problem [of] drug and alcohol abuse." (R. at 22, 27.) Thus, a finding that any adaptive functioning issues

6

manifested from adult substance abuse, and were not a result of developmental deficits, can be gleaned from the decision and is supported by substantial evidence in the record. See Berry, 675 F.2d at 468-69; Betram, 2013 WL 2403668 at *3; (R. at 27; see 25, 684 (discharge summary recommending future treatment for addictions "with mental health as an adjunct"); 737, 741 (substance abuse problems may cause interference with daily activities.)

11. Further, any erroneous failure to list cognitive limitations as a severe impairment is rendered harmless by the ALJ's subsequent consideration of mental limitations in the RFC assessment. Reices-Colon v. Astrue, – Fed. Appx. –, 2013 WL 1831669, *1 (2d Cir. May 2, 2013) (summary order); Ives v. Colvin, No. 5:12-cv-471, 2013 WL 2120273, *2 (N.D.N.Y. May 15, 2013); see Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010). Plaintiff acknowledges the ALJ determined that Plaintiff's limited ability to retain and carry out complex instructions limited him to simple work, but argues that reversal is nonetheless warranted because the ALJ's assessment of his mental RFC was "incomplete" in that he failed to make findings with respect to certain work-related functions. (Pl's Mem of Law at 19.) This Court disagrees.

An ALJ's "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) [physical abilities], (c) [mental abilities], and (d) [other abilities affected by impairment] of 20 CFR 404.1545 and 416.945." See SSR 96–8p, 61 Fed.Reg. 34,474, 34,475 (July 2, 1996). With respect to mental functional limitations, the ALJ must apply the "special technique" set out in 20 C.F.R. § 404.1520a(c)(3), which requires the ALJ to make a specific finding regarding the claimant's functional limitations in each of four broad functional areas: '[a]ctivities of daily living; social

7

functioning; concentration, persistence, or pace; and episodes of decompensation.'" Stivers v. Colvin, No. 5:11-cv-1-19 (GLS), 2013 WL 3327958, *5 (N.D.N.Y. July 2, 2013).

Here, the ALJ did assess these functional limitations. He concluded that Plaintiff had a mild restriction in daily living activities, mild difficulties in social functioning; moderate difficulties with concentration, persistence or pace; and no episodes of decompensation of an extended duration. (R. 21.) Further, contrary to Plaintiff's argument, the ALJ translated these findings into more specific conclusions regarding Plaintiff's ability to perform work, specifically finding that Plaintiff had an inability to understand, remember, or carry out complex and detailed tasks, resulting in the ability to do only simple work. See Stivers, 2013 WL 3327958 at *5 (mental RFC analysis requires more specificity than the broad functional areas); (R. at 22.) Plaintiff was also found to be able to only "occasionally interact with the public," but there were "no limits [to interaction] with co-workers or supervisors." (R. 22.)

Nonetheless, the lack of further specific discussion of these limitations renders it impossible to determine whether the ALJ's mental RFC determination was made after improperly discounting any non-exertional limitations stemming from Plaintiff's significant history of drug and alcohol abuse. See Day v. Astrue, No. 07–CV–157(RJD), 2008 WL 63285, *5 (E.D.N.Y. Jan 3, 2008). Although a claimant will not be considered disabled if alcoholism or drug addiction would be a material contributing factor to such a finding, the plain text of 20 C.F.R. § 404.1535(a) requires the ALJ first to determine whether a claimant is disabled by "using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." Day, 2008 WL 63285 at *5 (quoting Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003)); see 20 C.F.R. § 404.1535(a)("*[i]f we find you are disabled* and have medical

8

evidence of your drug addiction or alcoholism," *then* a determination will be made if such addiction is a material contributing factor (emphasis added)). "The inquiry here concerns strictly symptoms, not causes." Brueggemann, 348 F.3d at 694. "If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent." Id. at 694-95; Kinner v. Commissioner of Social Sec., No. 1:08-CV-1240, 2010 WL 653703, *3-4 (N.D.N.Y.,2010); see Orr v. Barnhart, 375 F. Supp. 2d 193, 200 (W.D.N.Y. 2005); McGhee v. Barnhart, 366 F. Supp. 2d 379, 389 (W.D. Va. 2005).

Here, neither the ALJ's decision nor the opinion of the state agency review psychiatrist – the only mental capacity assessment to which the ALJ specifically gave weight – offer sufficient narrative to illuminate this issue. See SSR 96–8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996) (a RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion"). Instead, the ALJ's statement that the alleged mental limitations are simply "a red herring" to divert attention away from substance abuse problems can be read as discounting those cognitive impairment symptoms from the RFC analysis. (R. at 27.) Indeed, the ALJ limited the non-exertional limitations to only depression and bipolar disorder. Further, the state agency psychiatrist's findings, offered in checklist form, are based in part on examination results obtained by consultative psychologist Dr. Baskin. (R. at 882.) Dr. Baskin opined that Plaintiff's test results were consistent with a cognitive problem that "*in itself*" did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (R. at 736-37, 740-41 (emphasis added).) This statement supports the conclusions of both the state review psychiatrist and the ALJ. However, Dr. Baskin further opined that the results

9

were also "consistent with substance abuse problems and *this may interfere*" with daily activities, including Plaintiff's ability to manage his own monetary funds. (R. at 737, 741 (emphasis added).) Indeed, this psychologist found that Plaintiff's "[p]rognosis was guarded given [his] history, current presentation and continued use of drugs and alcohol." (Id. at 737, 741.)

Similarly, the record contains other references to Plaintiff's impaired ability to function as a result of polysubstance abuse. (See e.g. R. at 464 (July 2007 outpatient treatment record reflecting homelessness and significant functional impairment), 576 (October 2007 progress note indicating Plaintiff was homeless after losing his job and relapsing after several months clean), 992 (May 2010 substance abuse treatment assessment indicating problems with appearance, stability, and delusions).) The ALJ's decision is unclear as to whether he determined that Plaintiff was not disabled after consideration of these symptoms, or if symptoms resulting from Plaintiff's substance abuse were discounted prior to this determination. The matter is therefore remanded to the ALJ to develop the narrative discussion regarding whether Plaintiff was disabled based on the entirety of his symptoms during the relevant time period and, if necessary, to then determine if his polysubstance addictions were a material contributing factor to the disability finding.

12. Plaintiff also argues that the ALJ failed to properly apply the treating physician rule when determining Plaintiff's physical RFC. Under this general rule, a treating physician's opinion is entitled to controlling weight if well supported by medical findings and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Gallivan v. Apfel, 88 F. Supp. 2d 92, 96 (W.D.N.Y. 2000). Here, the ALJ did not give significant weight to a physical RFC

questionnaire completed by an unnamed treating physician in June 2010. (R. at 27.) The ALJ stated that this opinion was "not supported by treatment notes or the objective medical evidence of record" and was contradicted by a prior November 2009 opinion that Plaintiff had no disabling physical conditions. (R. at 27.) Although these statements are not clearly erroneous, they fail to sufficiently articulate the "good reasons" the ALJ had for the minimal weight given to this opinion. See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); Gallivan, 88 F. Supp. 2d at 97 (neither general statements regarding lack of objective diagnostic testing or findings nor failure to quantify extent of restrictions sufficiently explicit to justify rejecting treating physician opinion). Accordingly, the narrative discussion of Plaintiff's physical RFC should be further developed on remand as well.

13. Resolution of the issues discussed above may affect Plaintiff's remaining contentions, therefore further comment at this time would be premature.

14. For the foregoing reasons, the Court cannot conclude that the ALJ's determination is supported by substantial evidence. Plaintiff's Motion for Judgment on the Pleadings is granted, and Defendant's motion is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED;

FURTHER, that the decision of the ALJ is REVERSED and this matter is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above decision;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 19, 2013
      Buffalo, New York

                                            /s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                                  Chief Judge
                                          United States District Court